**H. M. (Mike) MYRICK and Vernon Evans Bergman, a/k/a Soll Evans, Sol Evans and Sonny Evans, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 19950.**

United States Court of Appeals
Fifth Circuit.

Dec. 18, 1963.

Rehearing Denied Feb. 19, 1964.

As Amended May 26, 1964.

Joe B. Goodwin, Beaumont, Tex., Warren G. Moore, Tyler, Tex., for appellants.

Leighton Cornett, Asst. U. S. Atty., Tyler, Tex., Theodore George Gilinsky, Atty. Dept. of Justice, Washington, D. C., for appellee.

Before HUTCHESON and GEWIN, Circuit Judges, and HOOPER, District Judge.

HOOPER, District Judge.

The appellants Vernon Evans Bergman (also known as Soll Evans, Sol Evans and Sonny Evans) and Henry Madison Myrick (also known as Mike Myrick and Mike Mayer) were both found guilty under Counts One and Two, and Bergman was found guilty under Court Four, of the indictment returned against him.

Count One, based on 15 U.S.C. § 77q(a) charged a scheme to defraud various persons in the offer and sale of capital stock of Legal Security Life Insurance Company, capital stock of American Rare Metals Corporation, and of Motels Unlimited, Inc.

Count Two was based on 18 U.S.C. § 1341, charging use of the mails to defraud, based upon the same factual allegations contained in Count One.

Count Four (upon which Bergman only was convicted) was based on 18 U.S.C. § 2314 charging transportation in interstate commerce of a certain bank draft in the amount of $7,000.00.

The trial consumed approximately four days and the transcript of evidence contains some one thousand pages. It is not necessary for a consideration of the points of error relied upon to give a full discussion of the various charges against appellants and the evidence adduced to support the same. The evidence discloses that appellants were involved in a deliberate scheme to palm off on the public for a very substantial sum of money certain stocks which were of practically no value, that they used the mails in furtherance of this scheme and that Bergman caused to be transported in interstate commerce the draft referred to, the same having been obtained by

fraud. Some reference to the evidence will be made herein.

(1) The first point of error alleges "there is a material variance between the allegations and the proof in Count One of the indictment of such a nature as to affect the substantial rights of the appellant."

■ It is not necessary, of course, that the Government should have proved each of the charges contained in the indictment, but only necessary that a sufficient number of the charges in each Count should be proven to constitute a violation of the statute relied upon. The question of variance will therefore be approached from that viewpoint.

■ The second point of error complains of a variance likewise as to Count Two of the indictment and, since the allegations of both Counts One and Two cover the same subject matter, after a careful study of the entire record, we find no material variance.[1]

(2) Point of error No. 5 alleges the Court erred in overruling appellant Bergman's motion for a Judgment of Acquittal as to Count Four of the indictment. This Court charges Bergman with transportation in interstate commerce from Carthage, Texas to Alexandria, Louisiana of a bank draft in the amount of $7,-000.00, knowing the same to have been taken by fraud in violation of 18 U.S.C. § 2314.

■ Appellants insist the evidence does not show the draft was taken by fraud, nor that same was transported by Bergman as alleged. We cannot agree.[2]

(3) In point of error No. 6 defendants contend the Court committed fundamen-

1. Included among those allegedly defrauded in both Counts One and Two are Mrs. Esther Holmes and her husband Priestly H. Holmes (deceased at the time of the trial) and Mrs. Fannie Donald.

The indictment charged in Count One, paragraph one, that defendants did knowingly in the offer and sale of the capital stock of American Rare Metals employ a scheme to defraud, the same Count alleging in paragraph two that defendants did sell to Mr. and Mrs. Holmes a total of 1100 shares of said stock, obtaining $1,100.00 therefor, converted said money to their own use, and did not deliver any certificates to said purchasers. It was further alleged (paragraph 17(a)) that appellants represented "that the purchase of capital stock in American Rare Metals was a good, safe and sound investment, and that said stock would double in value by June, 1961." The indictment alleged (paragraph 18(a)) that American Rare Metals was dormant and had never begun operations, although organized several years prior to the defendants' sale of capital stock therein, and that there was no market for said stock.

The evidence as to American Rare Metals showed Priestly H. Holmes paid $400.00 and his wife $500.00 for stock in said company, the sale having been made by appellant Myrick. Representations were made to the purchasers indicating the company was earning money and purchasers were told they "would get a per cent back in June" (R. p. 345). The testimony showed representations were fraudulently made. General counsel for said company testified that American Rare Metals had previously withdrawn its offer of stock to the public, that it had no assets other than title to some land in Arkansas, which had been levied upon for a tax lien. The company had no funds with which to operate. Defendants obtained the right to buy 100,000 shares of its stock for $10,000.00 (that is 10¢ per share) but bought none, though their negotiations with the company in New York occurred February 20, 1961, twelve days after Myrick had received $900.00 from the Holmes and at a time when he could easily have purchased the 900 shares and deliver the same to the Holmes, but did not do so. If evidence of fraudulent intent were otherwise lacking to this transaction, defendants' plan and scheme to defraud is amply illustrated by many sales of stock whereby a number of people were defrauded out of substantial sums of money.

2. The draft for $7,000.00 payable to Mrs. Fannie Donald was endorsed by her and Soll Evans (Bergman) and appear in the records of the bank. The evidence is sufficient to show it was deposited by Bergman, designed to be sent in interstate commerce, and that it was fraudulently obtained from Mrs. Donald under representations that her investment would yield ten to twelve per cent, said defendant knowing at the time that was untrue.

tal error in failing to set out in its charge to the jury the essential elements of the offense charged in Count Four of the indictment. The brief for appellant recites: "The Court in its charge to the jury failed to require a finding on the part of the jury that the draft or check referred to in the indictment must be proven to be of the value of $5,000.00 or over."

It is true that 18 U.S.C., § 2314 requires in part that the transportation in question must relate to securities "of the value of $5,000 or more." The Court in one portion of his charge (see Transcript, p. 879 and p. 880) stated as follows:

"Now that section just referred to provides in effect that it shall be unlawful for any person to transport or cause to be transported in interstate commerce any money of the value of $5,000.00 or more, knowing the same to have been taken by fraud."

In another portion of his charge to the jury (Transcript, p. 880) the Court in stating the essential elements required to be proven under Count Four, did not expressly state that the value of the security must be shown to equal $5,000.00.

█ The evidence in the case shows without dispute that the draft in question was in the sum of $7,000.00 and that it was of the value of $7,000.00 because it was paid. No reversible error is shown in the above Charge of the Court.

(4) In points of error No. 3 and No. 7 error is assigned upon the admission in evidence by the Court of photostatic copies of documents, primarily checks.

A subpoena was issued to the bank for production of these records and a bank official appeared, but instead of bringing the original microfilms of the checks he brought prints from the same which he identified as having been made from the microfilms. Defense counsel objected to the admission of this evidence because as alleged, "under the best evidence rule that there has been no predicate laid." The Court overruled this objection but recessed court and suggested that defense counsel read § 1732 of Title 28 during the recess.

A reading of said section by counsel would have disclosed that the reproduction of such checks is,

"* * * admissible in evidence if the original reproduction is in existence and available for inspection under directions of court." See 28 U.S.C. § 1732(b).

See Williamson v. United States, 5 Cir., 272 F.2d 495, where this Court ruled, a photostat taken from permanent title records and properly identified by the proper custodian is admissible in evidence, it appearing the original records had been destroyed in ordinary course of business.

That case was cited by this Court with approval in the case of Ahlstedt v. United States, 315 F.2d 62 (5 CCA), the latter case being distinguishable under its facts.

█ Had defense counsel made the slightest suggestion that the photostats offered in evidence were incorrect, or had he demanded production of the microfilms from which they were produced, it is apparent the trial judge would have taken appropriate action, but that was not done. Our ruling is based upon a matter of substance and not a finespun technicality. It is clear that production of the original microfilms, if insisted upon, would have been granted by the Court.[3]

3. There are many rulings to the effect that, "* * * a trial judge, in ruling on objection to evidence, should be fully apprised of the grounds of objection and given an opportunity to so direct the proceeding as to insure a fair trial to all." New Amsterdam Casualty Company v. W. D. Felder & Co., (5 CCA) 214 F.2d 825(7).

That case also disposes of appellants' other points of error based on the admission in evidence of a list or summary of checks clearing through a bank and taken from microfilm records of the bank, as it appears the microfilm records involved were in court and available for inspection.

A careful study of the record in this case discloses that the evidence was sufficient to prove the guilt of appellants beyond a reasonable doubt and that no error of law appears requiring a reversal of the judgment. Therefore the judgment of the trial court is

Affirmed.