Sarah **ARROYO**, Respondent,

v.

George S. **KELLER**, Jr., Appellant.

No. 24839.

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 7, 1968.

Application to Transfer Denied Dec. 9, 1968.

Walter F. Moudy and Russell D. Jacobson, Kansas City, for appellant.

Michael F. Mahoney, Kansas City, for respondent.

CROSS, Judge.

Plaintiff brought this action to recover damages for personal injuries sustained when defendant drove an automobile into the rear end of a car she occupied as a passenger. At the trial defendant admitted liability for the collision and plaintiff's resulting injuries. Plaintiff had a $2,500.00 verdict and judgment and defendant appeals. The sole appeal question preserved is whether the trial court committed prejdicial error by overruling objection to statements by plaintiff's counsel in argument to the jury.

Involved in the collision were three automobiles traveling in the same direction, in the same lane. Plaintiff was in the middle car and defendant's car was last in line. The front car had stopped still, waiting to turn left. The car in which plaintiff was riding also came to a stop. Some ten seconds later defendant ran his automobile into the rear of the stationary vehicle occupied by plaintiff at a speed of 35 miles per hour, knocking it into the rear end of the front car.

Plaintiff received injuries to her back and neck. At her doctor's direction she

was hospitalized for approximately a week for traction to her neck and back, accomplished by "a collar for traction on her neck, with an iron bar in the back and weight on it of about four or five pounds, and * * * traction over her pelvis or her back at the waistline on the back of the bed." She also received physiotherapy and was given sedatives to relieve pain. When she left the hospital she wore a neck collar which had been fitted to her, and continued to wear it for almost two months. Following her release from the hospital she was treated at her doctor's office approximately twenty-five times. At the trial (some eighteen months after the accident) plaintiff testified that "her back still hurts a lot" that "my neck and head aches also", and that her neck "still hurts when I turn." She stated that before the accident she never had pains of that type in her head or neck or back, and that since that time she was "tired and my back always hurts, my back and my neck and head aches, and I don't get the work done that I used to do." Plaintiff was employed as a seamstress doing piece work, at the time she was injured. She was absent from work for about three weeks, and resumed her occupation.

Dr. Nigro testified as plaintiff's consultant and treating physician, to facts here stated. When he first examined plaintiff she complained of headaches and pain about the neck and back. X-rays of her spine showed no fracture, dislocation or bone injury. On physical examination he found "a lot of soreness about the neck, over the 6th and 7th cervical vertebrae." She also had muscle spasm described as involuntary contraction of the muscles. She had "some limited motion about her neck, couldn't turn it right or left or forward or backward." There was tenderness and muscle spasm in the lumbosacral region over the 3rd, 4th and 5th lumbar vertebrae. Leg lifting revealed limitation of motion and involuntary contraction. Involuntary contraction also resulted from bending. Upon inquiry plaintiff stated "she felt

pretty healthy until she got hurt." The doctor gave her sedatives for pain, diathermy to her neck and back and hospitalized her for traction on her neck and back; also heat treatments and medication. Upon re-examination of plaintiff about two months prior to trial, Dr. Nigro found, "She had still some muscle spasm, stiffness about her neck, limited motion and also some tenderness and limited motion about the back in the lumbosacral region." In the doctor's opinion those conditions are permanent in nature.

Plaintiff's counsel propounded the following hypothetical question to Dr. Nigro: "Assume that before September the 18th, 1965, she enjoyed reasonably good health; that she at least had no trouble with her spine or her neck or her lower back and that on that date, while she was a passenger in an automobile which was stopped, it was struck from the rear by another vehicle, and pushed forward into collision with a car that was stopped ahead of it, and that in the collision the seat was jostled around in the car on which she was seated, and at least a couple of hours later she noticed pain in her neck and in her back, and she went to work after the accident and worked two complete days; on the third day she went to work she wasn't able to work the full day; that she saw you on the dates you have told us about; that you examined her; that you made the findings you have testified to here today, that you treated her in the manner which you have described and that you found her to be in the condition that she was in when you last saw her; do you have an opinion, Doctor, based upon reasonable medical certainty, whether this accident I have described to you would be the cause of the conditions which she has now?" Answering the question, Dr. Nigro stated, "My opinion is that the accident caused her complaints."

Dr. Paul Centner examined plaintiff on June 6, 1966, on behalf of defendant and testified as its expert witness. In a history given him by plaintiff, she described the accident, stated that she developed soreness

in her neck and back within two or three hours thereafter, and detailed her hospitalization and treatment by Dr. Nigro. With reference to her past medical history she stated she had had no serious illnesses or other injuries. Her then present complaints were of pain in her back, neck and head. On physical examination he found some diminished sensation in her left extremities. In addition to his physical examination of plaintiff, Dr. Centner took several X-rays. He interpreted them as indicating plaintiff had considerable degenerative or wear and tear changes of the spine, otherwise designated as osteo-arthritis. He testified he saw no residual objective evidence of injury and expressed the opinion that the described changes pre-existed the accident and were not the result of trauma. From X-rays taken of plaintiff's spine bent forward as far as possible (plaintiff looking at the floor) and bent backward to extreme limit (plaintiff looking at the ceiling), Dr. Centner found that the amount of curvature possible, both forward and backward, was less than normal. Plaintiff's spine appeared to be "somewhat restricted as to range of motion", and there appeared to be "a certain amount of rigidity or lack of motion in the spine." He concluded that "she might have had some muscular ligamentous strain in the neck and low back area, which were superimposed, let us say, on top of these pre-existing degenerative changes;" also that "her residual complaints were probably being prolonged somewhat by reason of the fact that she had all of this pre-existing degenerative change."

On cross-examination the witness testified that the X-rays showed a narrowing of the disc spaces in the cervical vertebrae, that such condition is not normal and that it might cause pain. He admitted that if "this tearing or this acute muscular ligamentous strain was imposed on an arthritic spine" it would cause pain. With respect to the "arthritic changes" he had found in the X-rays, the doctor testified that similar changes can be caused by trauma; but

that when so caused are more localized and usually do not occur until a period of years later. He conceded that his X-rays could be interpreted "or, depending on your viewpoint, misinterpreted" differently by other physicians.

Plaintiff's counsel in closing argument remarked to the jury, "What is it worth to have the disc spaces in your cervical spine become narrowed?" Defendant interposed objection to the remark on the grounds that it was not supported by and was contrary to the medical testimony. The court effectively overruled the objection by stating the jury would have to remember what the medical testimony was. Additionally plaintiff's counsel commented: "Now, what is it worth for a person to have a straightened curve * * *. This woman's spine is straightened." Objection to the latter remarks was specifically overruled.

■  Plaintiff's brief presents a motion to dismiss the appeal on the ground that defendant's brief fails to comply with Civil Rule 83.05(c) and (e), V.A.M.R. Plaintiff complains that defendant's statement of facts is not in the required form and that the points relied on are not "a short and concise summary of what the appellant claims the trial court did wrong." We find the statement of facts reasonably sufficient for its intended purpose, in view of the limited scope of review required in this case. And, although the single point contained in defendant's brief (extending to one full page) does not "briefly and concisely" submit his contentions of error, contains allegations of error that have not been preserved for review, and is argumentative, we do not believe there is sufficient reason shown to justify dismissal of the appeal. The motion is accordingly denied.

■  Defendant's single point contains several allegations of error that were not brought to the trial court's attention by the motion for new trial. It is elementary that a claim of improper argument by

counsel which is not set out in a motion for new trial is not reviewable by an appellate court. 2A Mo.Digest, Appeal and Error, ☞301, subdivision 1. Our review will be limited accordingly. The only allegations of error contained in defendant's motion for new trial are quoted as follows:

"1. The Court committed prejudicial error in permitting plaintiff's counsel to argue over the objections of defendant that the conditions observed by Dr. Centner in X-rays taken of plaintiff were caused by the accident when there was no substantial evidence to support said argument.

"2. The Court committed prejudicial error in permitting plaintiff's counsel to argue over defendant's objections that the accident caused or contributed to cause a narrowing of the disc spaces in plaintiff's spine, spurring in plaintiff's spine, lumbar lordosis, and other degenerative changes in plaintiff's spine."

The only question now raised by defendant reasonably within purview of his motion for new trial is whether there was evidence to support the previously quoted remarks of plaintiff's counsel inferring that the accident caused or contributed to cause the narrowing of disc spaces in plaintiff's spine and her spine to be "straightened".

■ The field of argument to the jury is broad. Although counsel are not permitted to go beyond the issues or urge theories which the evidence does not justify, they are allowed wide latitude in discussing the facts and arguing inferences from the evidence, even though the inferences drawn may appear to be illogical or erroneous. Harp v. Illinois Central Railroad Company, Mo.Sup., 370 S.W.2d 387. 27 Mo.Digest, Trial, ☞121(2). Furthermore, the control of argument to the jury is primarily the function of the trial court, which is vested with broad discretion to determine the propriety of counsel's argument. Ordinarily the appellate court will not interfere with the trial court's rulings

unless it clearly appears there has been an abuse of such discretion. 27 Mo.Digest, Trial, ☞No. 106. 3 Mo.Digest, Appeal and Error ☞972.

■ For reasons soon to appear, it is immaterial to our disposition of this appeal whether the challenged remarks of plaintiff's counsel were within the record. Nonetheless we have examined the question in the light of the foregoing rules, and we deem it sufficient to say that, in our opinion, the trial court did not abuse its discretion by permitting the argument in question and did not thereby commit reversible error. In reaching this conclusion we have given due consideration to cases cited and relied upon by defendant.

■ Plaintiff has received the modest award of $2,500.00 for painful and disabling injuries admittedly caused by defendant's negligence. There is convincing evidence, both subjective and objective, that she received substantial injuries to her back, neck and spine requiring hospitalization, traction, and extensive medical treatment. She has suffered pain in those areas since the accident as a result of her injuries, and still continues to do so. She continues to have muscle spasm, limited motion, and stiffness in her neck, and limited motion and tenderness in her back. Her ability to work has been impaired. These conditions are permanent. Defendant does not make any point that the verdict is an excessive award for plaintiff's injuries. Furthermore, it appears to this court that the damages assessed are not an overly generous allowance for the injuries sustained. Under these circumstances it is uniformily held that a reviewing court need not determine whether the trial court erred by admitting improper evidence or permitting improper argument, because error in either respect should not be held prejudicial.

In Anderson v. Bell, Mo., 303 S.W.2d 93, the Supreme Court said: "Defendant Johnson contends that the trial court erred in admitting in evidence over his objection

three photographs of plaintiff, one taken prior to the accident, one while plaintiff was in the hospital shortly after the accident, and one after plaintiff's facial lacerations had healed. We need not determine whether the trial court abused its discretion in admitting any of those photographs for the reason that neither defendant here relies on the point that the verdict was excessive. The photographs, under the facts of the instant case, could have affected the issue of damages only, and any error in their admission was harmless. Cf. Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 877(5), 254 S.W.2d 577, 584(7, 8)."

In Davis v. City of Independence, Mo. Sup., 404 S.W.2d 718, the Supreme Court further said: "Plaintiff received a verdict of $6,000. Her injuries were rather severe, chiefly to her left elbow; it was necessary to operate on the elbow three or four months after the injury and remove a part of the head of the radius. There was substantial evidence, objective and subjective, of permanent injury and of resulting disabilities. In view of the size of the verdict, we cannot find that the argument complained of had any prejudicial effect upon the amount of damages, and indeed defendant does not make any point of excessiveness. In such situations it has been held that neither improper argument nor improper evidence should be held prejudicial. Bennett v. Kitchin, Mo., 400 S.W.2d 97, 104; Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167; Bobos v. Krey Packing Co., 323 Mo. 224, 19 S.W.2d 630."

And, in Rogers v. Spain, Mo.App., 388 S.W.2d 518, the court said: "It should also be noted that it is not contended here that the verdict is excessive, and the testimony of the doctor could only go to the measure of plaintiff's damages. Permanent injuries were not itemized in the measure of damage instruction, and the verdict appears to be but modest compensation for the injuries sustained. It therefore appears that if the testimony had been erroneously admitted, it would not be prejudicial. Millard v. St. Louis Public Service Co., Mo.App., 330 S.W.2d 147; Willis v. Rivermines I. G. A. Supermarket, Mo.App., 350 S.W.2d 437; Anderson v. Bell, Mo.Sup., 303 S.W.2d 93."

Under the foregoing authorities, even if we assumed that the trial court erred when it permitted plaintiff's counsel to draw the inferences complained of in his argument to the jury, we would be constrained to rule that no prejudice to defendant resulted.

The judgment is affirmed.

All concur.