**F. C. PREUITT CONSTRUCTION CO., INC., Respondent,**

v.

**Roy DOTY and Charles Soetaert d/b/a Overland Excavating Company, Appellants.**

**No. KCD 27341.**

Missouri Court of Appeals, Kansas City District.

May 3, 1976.

Charles A. Lewis, Connaughton & Lewis, Kansas City, for appellants.

Charles R. Svoboda, Kansas City, for respondent; Fred A. Murdock, Kansas City, of counsel, on brief.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an action for damages based upon an alleged breach of an oral contract. The respondent (hereafter Preuitt) was the general contractor for the construction of an addition to the Ervin Junior High School, Raytown, Missouri, and the oral contract sued upon covered certain excavation, grading and other earth work to be done by the appellants (hereafter Overland) as subcontractor on said construction. Overland filed a counterclaim seeking the sum of $4,242.58 for work based upon quantum meruit which it was alleged had been done on the job but not paid by Preuitt. A jury was waived and the evidence was presented to the court below sitting as the trier of facts. That court made extensive findings of fact and conclusions of law, and entered judgment in favor of Preuitt in the amount of $4,757.67 on its petition, and denied Overland any recovery on the counterclaim. After an unsuccessful motion to amend judgment, Overland appealed to this court.

Overland raises two assignments of error. The first of these (in summary) is that the court erred in failing to sustain Overland's motion for directed verdict (sic) because: A) Overland's objection to and motion to strike the evidence of Preuitt as to Overland's specific contractual obligations, as a subcontractor, under the prime written construction contract between Preuitt and the school district, should have been sustained since such prime contract was not in evidence nor was any other substantive and admissible evidence offered by Preuitt to establish any obligation of Overland to perform such specific excavation services; and B) there was no proof that the charges paid by Preuitt to others to complete the originally required excavation work were reasonable, and thus there was a failure of proof as to monetary damages.

Overland's second assignment of error (in summary) is that the court erred in denying Overland recovery on the counterclaim based upon work done but not paid for; that quantum meruit was pleaded, proved and conceded, and Overland was entitled to a judgment for $4,242.58 on the counterclaim.

■ Since this is an appeal of a court-tried case, the review is upon "both the law and the evidence as in suits of an equitable nature"; due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses; and, the findings and judgment of the court below will not be disturbed if supported by substantial and credible evidence. Rule 73.01.

The transcript of evidence, record and exhibits entered below, and the authorities and legal arguments of counsel, have been carefully reviewed and independent legal research made. It is concluded that the judgment below be affirmed.

A summary of the facts necessary to the resolution of this appeal is as follows:

In 1965, Preuitt was a general contractor engaged primarily in the construction of commercial buildings and schools. It had constructed the original Ervin Junior High School in Raytown, Missouri and the first addition thereto, prior to 1965, as general contractor. In each of those jobs Overland had done the excavation and dirt work as a subcontractor at a fixed price, and not upon the basis of an hourly charge for machinery and equipment.

On February 4, 1965, Preuitt was the low bidder on a second addition to be constructed to the school and was awarded the general contract at a fixed price of approximately $1.5 million dollars.

Prior to submitting its bid on the second addition to Ervin school, Preuitt arrived at its bid by preparing a "bid estimate sheet" which separated the various classifications of work to be performed on the job, some of which was to be performed by Preuitt and the remainder to be subcontracted by Preuitt to others. For the work to be per-

formed by subcontractors, Preuitt requested them to submit to it their bids in accordance with the plans and specifications at a fixed price. Preuitt then used the low bid on each category to figure the overall total bid price to be submitted.

Knowing of Overland's familiarity with the job site, location and nature of the work, sometime prior to February 4, 1965 Preuitt requested Overland, by telephone, to bid on the site grading and excavation work on the Ervin second addition, according to the plans and specifications. On February 4, 1965, Overland advised Preuitt over the telephone that it bid $18,412.00 on a base bid, $987.00 for additional work covered in Alternate # 6, and $510.00 for additional work covered in Alternate # 7, a total bid of $19,909.00 for the dirt work. Mr. Preuitt testified that it was a custom and practice in this area to solicit and receive bids from subcontractors to use in figuring a general contractor's bid on the prime contract, by telephone. It has been Overland's position throughout that any work undertaken or done on this job was not a fixed price contract but rather upon an hourly charge.

Preuitt used the Overland figures and incorporated them in its bid. On February 4, 1965, when Preuitt was awarded the contract, Mr. Preuitt advised Overland over the telephone of this fact and that its bid for the dirt work was accepted. On February 16, 1965, Mr. Preuitt wrote Overland a letter, which his secretary testified was mailed to Overland that day. In pertinent part, this letter states:

"This is your authorization to proceed with items of dirt work on the Ervin Junior High School, as per your telephoned quotation of February 4, 1965, all according to plans and specifications prepared by Hollis & Miller, Architect.

The Board accepted alternates 6 and 7 which add to your base bid of $18,412.00, the sum of $1497.00 (alt. # 6 $987.00 & alt. # 7 $510.00) making a contract price of $19,909.00 to you.

\*       \*       \*       \*       \*       \*

Have your insurance carrier send a Certificate of Insurance to me showing you are covered on this job for the amounts stated in the specifications.
\*    \*    \* "

Overland made no objections to the terms of this letter and provided Preuitt with the Certificate of Insurance as requested. However, Doty, the operating partner, of Overland, testified his company had never been notified that it had been awarded a specific dollar contract and had no recollection of the work covered by Alternates 6 and 7. He stated that he had no knowledge of the letter until discovery proceedings after suit.

The job did not proceed immediately because of weather conditions. In March or April, 1965, Mr. Doty was called by the Superintendent on the job and requested to move the site dirt and the footings on the building. On April 8, 1965, Overland moved men and machines onto the job, and according to Mr. Preuitt, worked thereafter until the latter part of May or early June, when it left the job site. Mr. Preuitt testified that Doty stated that he had to leave for "three or four days" to "finish another job" but that "he would be right back". Doty testified that Overland worked the job from about April 8, 1965 through June 23, 1965. The work was further delayed by a cyclone and some difficulty with a high pressure line. Doty stated that on June 23, 1965, the job was a "great, big general mess" and "bogged down" and so "we left the job". Some of the Overland work had been completed, but a substantial amount remained to be done.

Despite Doty's disclaimer of knowledge of a definite contract with Preuitt, Overland submitted to Preuitt an invoice for work performed "Against contract" for $10,000.00 containing no itemization of hourly charges for men and machines. Apparently, such an invoice was again presented, and on May 21, 1965, Preuitt paid Overland $9,000.00 on such invoice, withholding $1,000.00 for the customary 10% retention.

The record then discloses that Preuitt requested Overland upon many occasions to

complete its work, with no results; the School Board in turn was putting pressure on Preuitt to complete the earth work, particularly on the football field, so that it would be ready for practice; and, the Board finally notified Preuitt to complete the work or the Board would have it done and back-charge Preuitt. Under this compulsion and Overland's failure to complete its contract, Preuitt employed several others to complete the grading and excavating upon the basis of hourly charges for machinery and equipment. It apparently would have been possible for Preuitt to have obtained new bids on the uncompleted work under the Overland contract, but this would have entailed a new engineer's survey and would have been time-consuming. Preuitt did this completion work at a cost of $15,666.67 in addition to the $9,000.00 already paid Overland, making the total cost to Preuitt of $24,666.77 or $4,757.67 in excess of the original contract price to Overland of $19,909.00. The cost for the completion of the job was proved by actual cancelled checks from Preuitt, and Mr. Preuitt unequivocally testified that all of the work thus represented was work which Overland was obliged to do under the original bid and resulting subcontract, and no substantial proof was offered by Overland to the contrary. Presumably, the general contractor, Preuitt, would know what remained undone when Overland left the job. Overland made no attempt to subpoena the Preuitt-Board original general contract nor the plans and specifications, or to otherwise pursue discovery process to establish its apparent claim that Preuitt procured persons and machines to do work which Overland was not required to do either under contract or upon an hourly basis, the method used by Overland to support the allegations of the counterclaim.

The evidence offered by Overland was an itemization of the machines used and the man-hours worked by Overland on the Ervin second addition supported by Overland's intra office records, which totaled $13,242.58. After credit for the $9,000.00 payment, Overland claims a balance due of

$4,242.58. It should be noted, however, that Overland never did bill Preuitt upon this basis. Aside from the original billing of $10,000.00 "Against Contract", above noted, Overland billed Preuitt seven times from June 2, 1965 through January 6, 1966, after Overland had left the job. Each of these billings was for the $1000.00 representing the 10% retention on the original billing under the contract. It was not until this litigation arose in 1970 that Overland made any claim or demand based upon an hourly charge. There was evidence that as a general business practice or custom, this type of subcontract is usually upon an hourly basis, but that at times such contracts are let at a fixed contract price. The two previous dirt contracts to Overland as subcontractor of Preuitt on the original Ervin school and the first addition, were fixed price contracts. It would seem reasonable that the contract here involved was such a fixed price contract since the element of unknown risk to Overland was minimized by reason of previous knowledge and experience on the Ervin school site. Mr. Preuitt testified with specificity that the work covered by Overland's base bid consisted of roughing out building site and football field; grading parking lot; footings; foundations and excavations; and spreading dirt on football practice field. The Alternates No. 6 and No. 7 were for additional dirt work on roads, not included in the base bid. He identified the figures received from Doty (Plaintiff's Exhibit No. 3) and that they were used by him in his bid for the job as shown on his bid sheets (Plaintiff's Exhibit No. 2). He further testified that as general contractor, he was required to do this work. This testimony and the supporting exhibits with reference thereto were admitted into evidence without objection.

Further, Mr. Preuitt testified that when Overland left the job, it had completed the building excavation, footing excavation and stockpiled the black dirt. He stated that the work left undone under his contract with Overland was roads to be cut, football field and practice field to be roughed in and finished and the stockpiled dirt to be

spread. This testimony was also admitted without objection. Further, Mr. Preuitt testified that he arranged for this unfinished work to be done by others, and identified each detailed invoice for such work, and the checks issued in payment thereof. No objection was made to this evidence.

■ It thus appears that all of the elements necessary to establish an oral contract, partial performance and payment thereon; abandonment, breach and damage were established by competent oral and documentary evidence, without objection. It has long been the rule in this state that parol evidence is properly admissible to prove the terms of an oral contract. *Iowa-Missouri Walnut Co. v. Grahl,* 237 Mo.App. 1093, 170 S.W.2d 437, 440[2] (1943); *Ashbaugh v. Sims,* 483 S.W.2d 80, 83[3] (Mo. App.1972). In the case at bar, the existence of the contract not only found support in the oral testimony of Mr. Preuitt but such testimony was buttressed by the letter of February 16, 1965, confirming the agreement and accepting Overland's offer and the notations of the amounts bid and the use thereof in the estimate sheets used by Preuitt as the basis of its general contractor's bid on the whole job. While the testimony of Doty created a conflict of evidence, in that he denied the agreement and contacts with Preuitt, the submission of fixed price bids and any knowledge of the February 16, 1965 letter of confirmation, such conflict involved credibility and was for initial resolution by the trier of the facts to which this court defers (even under the somewhat less rigid standards of Rule 73.01, as amended March, 1974) unless "satisfied the trial court's findings should be otherwise", *Morris v. Holland,* 529 S.W.2d 948, 952[1, 2] (Mo.App.1975), a decision of the Springfield District of this court; *Brand v. Brand,* 534 S.W.2d 628 (Mo.App., decided 3/2/76, St. Louis District); *L.H.Y. v. J.M.Y.,* 535 S.W.2d 304 (Mo.App., decided 3/23/76, St. Louis District). The trial court found a valid oral contract, such finding was supported by substantial evidence, and nothing appears that impels a conclusion that such finding "should be otherwise".

But Overland stoutly asserts that error was committed in permitting the testimony of Mr. Preuitt establishing the terms of such contract in the area of work commitments, extent of work done by Overland, and work which Preuitt completed, and that such testimony should have been stricken. The basis for this contention is that the "best evidence" rule was violated and rests upon a single isolated trial incident occurring after the detailed evidence of Preuitt, above summarized, and Mr. Preuitt's testimony as to completion costs. The record discloses this:

"Q. (By counsel for Preuitt) *Was that all for work you had to do on that job after Roy Doty (Overland) left the job* and which you were required to perform and *which you feel he was obligated to do under this subcontract?*

A. Yes.

MR. LEWIS (Counsel for Overland): Your Honor, I want to move *that answer* be stricken. *The contract is the best evidence of what the subcontractor was required to do in this case.* This *man's opinion* of what might have been required by another written contract which is not in evidence *is completely irrelevant and immaterial.* This witness is not competent to testify to that.

THE COURT: Well, I am allowing it as I said before, *because that is his view of it.* You may make further objection to it later. Proceed." (Emphasis and material in parenthesis supplied)

■ There are many reasons why this judgment should not be reversed upon this isolated trial incident. The basis for the objection is confused and unclear. The testimony of Mr. Preuitt, thus elicited, was cumulative. He had previously testified, *without objection,* to the facts leading to the allegedly objectionable answer quoted above, which, at best, was a conclusion or "his view of it" (as the court stated) and went only to the weight of the evidence.

No motion was then or at anytime made by Overland to strike all preceding testimony either at the time of the trial incident or at anytime during the trial. Even a valid objection under the best evidence rule is essential to its preservation as error. 2 Jones on Evidence, 6th Edition, Section 7:3, p. 93.

■ However, the one overriding and conclusive reason why this assignment of error is without substantial validity is that the terms of the general contract between Preuitt and the school board were merely collateral and circumstantially relevant to the issues between the parties here. The best evidence rule has no application to proof of facts collateral to the issue. 2 Jones on Evidence, 6th Edition, Section 7:4, p. 96; 32A C.J.S. Evidence § 781–782, p. 100; *State ex rel. Bush v. Elliott*, 363 S.W.2d 631, 633–634[3] (Mo. banc 1963); *State ex rel. State Highway Commission v. Galeener*, 402 S.W.2d 336, 338–339[3] (Mo. 1966); *Rutledge v. Weisenborn*, 142 S.W.2d 884, 886–887[3] (Mo.App.1940).

■ The underlying reason for the best evidence rule in the area of contract law is to prevent fraud, as, for example, a person having made a written agreement obligating him to one thing, attempts to establish by parol or extrinsic evidence that his obligation was another thing. In such a case, the basic agreement, being written, is the best evidence, and, as a rule of thumb, cannot be altered, modified or its terms impeached by extrinsic or parol evidence. However, as in this case, where the oral contract established by Preuitt's evidence "has an existence independently of any writing" it may be established by oral testimony even though the fact "is evidenced by a writing". 29 Am.Jur.2d, Evidence, Section 449, p. 510.

In *Aviation Enterprises, Inc. v. Cline*, 395 S.W.2d 306, 308[5, 6] (Mo.App.1965), recognition was accorded the exception to the best evidence rule permitting secondary evidence to prove collateral issues. This court said in *Cline* :

"It also appears that where *the contents of the writing is not directly in issue, although the evidence contained in the writing may bear upon a fundamental issue* in the case, that *the best evidence rule does not apply* and that secondary evidence may be used without accounting for the original document. * * * It should also be remembered that in many instances *the fact to be proved exists independently of any writing;* that it incidentally happens that there is evidence of such fact contained in a writing, as well as other evidence of such fact which exists completely independent of any writing. In such situation, *both the written document and oral testimony constitute primary evidence of the independent fact.* In such situation, *either* documentary or parol evidence may be used to prove the independent fact and the best evidence rule is not applicable. * * * * " (Emphasis supplied)

The case of *Solway Decorating Company, Inc. v. Merando, Inc.*, 264 A.2d 501 (D.C. App.1970) is factually practically identical to the case at bar. A painting company, *Solway,* agreed in a telephone conversation with the general contractor, *Merando,* to do painting work on a high school building for a fixed price, which price the general contractor used in submitting its bid. When the contract was awarded to Merando, Solway refused to follow through on its oral contract, the general contractor was forced to obtain another painting contractor, and suit was brought for damages for the breach. The court held that Merando was entitled to recover from Solway upon the doctrine of promissory estoppel, in that it had made a promise which reasonably led Merando to rely upon such promise to its detriment, with resulting damage not otherwise avoidable.

Solway argued that proof of reliance upon the promise with reference to the painting subcontract was not established since the summary bid sheet on the whole contract was not produced showing that Solway's bid figure on the painting contract

was in fact used in the primary bid. In rejecting this argument, the court said, l.c. 503[2]:

" * * * *This is not a case calling for the application of the best evidence rule since Merando was not attempting to prove the contents of a written document.* * * * We conclude that the trial judge was correct in ruling that Solway's objection to the absence of the summary sheet was properly addressed to the weight of the evidence offered." (Emphasis supplied)

■ Likewise, in the case at bar, Preuitt was not relying upon or attempting to prove the content of its contract with the school board. Also, Preuitt did offer its estimate sheets used in bidding the Ervin school second addition job which did incorporate the figures bid by Overland on the dirt work. While such prime contract would doubtless have been evidence of probative value to show the details of the dirt work required and would have been admitted as evidence thereof, it was not relied upon by Preuitt for its cause of action against Overland for breach of the oral subcontract for dirt work. At most, it was collateral and incidental to the basic cause of action and the best evidence rule was not applicable. It was not a valid ground for objection to the isolated question and answer above quoted. Overland was not precluded from producing or causing the production under compulsory process of the prime contract for whatever use or advantage Overland may have gleaned therefrom. 2 Jones on Evidence, 6th Edition, Section 7:3, pp. 93–94.

■ Overland further contends under the first point relied on that Preuitt failed to make a prima facie case as regards monetary damages since there was no showing that the charges paid by Preuitt to others to complete the dirt work were reasonable. There can be no argument with the rule, as stated in the cases relied upon by Overland on this point, that where there has been a part performance of a construction contract, the owner's measure of damages is ordinarily the reasonable cost of completion.

■ A corollary of this rule, however, is that in a contract action involving determination of the reasonable value of services, in the absence of evidence to the contrary, the amount actually paid for such services is evidence, at least prima facie, of their value. *Wyse v. Miller*, 222 Mo.App. 165, 2 S.W.2d 806, 807[1] (1928); *Catanzaro v. Duzer*, 329 S.W.2d 257, 261[5] (Mo.App. 1959); 31A C.J.S. Evidence § 184, p. 494; *Burch v. Levy Bros. Box Co.*, 47 Cal.App.2d 104, 117 P.2d 435, 436[2] (1941). This rule has equal application to and persuasive force upon completion damages incurred with reference to construction contracts. 17A C.J.S. Contracts § 512, p. 837.

■ With reference to Overland's final point (II), that it should have been allowed damages on its counterclaim under the principle of quantum meruit, the law is well defined. In this construction contract situation the courts have sought a two-fold objective: First, to preserve to the party not in default the benefit of his bargain; and second (and secondary), to allow the defaulting party to be compensated for the reasonable value of his work and materials furnished to party not in default. But this eminently fair and just premise has not been simple in its application and further judicial refinements have of necessity evolved. Of these, one explicates the rule that the defaulting party may recover in quantum meruit the reasonable value of his services less any damages which the non-defaulting party has suffered by reason of the default. *Bradley Heating Company v. Thomas M. Sayman Realty and Investment Company*, 201 S.W. 864, 865[3] (Mo.1918); *Edmonds v. Stratton*, 457 S.W.2d 228, 233–234[10, 11] (Mo.App.1970); *Samuels v. Illinois Fire Insurance Company*, 354 S.W.2d 352, 357–358[2, 3] (Mo.App.1961); 17A C.J.S. Contracts § 511, pp. 831–832, § 512, pp. 835–836; *Miller v. Baum*, 272 S.W.2d 775 (Tex.App.1954); *Gregg v. Dunn*, 38 Mo. App. 283, 288 (1889).

■ Based upon the application of these rules and the evidence adduced, it is appar-

ent that the cost to Preuitt for the dirt work on the Ervin second addition totaled $24,666.67 ($9,000.00 paid Overland and $15,666.67 paid to others for completing the work). The original contract price with Overland was $19,909.00; the difference or damages sustained by Preuitt was $4,757.67, the amount of the judgment. Overland was entitled to nothing on the counterclaim.

The judgment is affirmed.

All concur.