Delbert LEWIS, et al., Appellants,

v.

BUCYRUS–ERIE, INC., Respondents.

No. 62471.

Supreme Court of Missouri,
En Banc.

Oct. 13, 1981.

Arthur J. Kase, Joseph A. Cambiano, Rubins, Kase & Rubins, Inc., Kansas City, for appellants.

Gordon N. Myerson, William M. Modrcin, Morris, Larson, King, Stamper & Bold, Kansas City, for respondent.

Stephen H. Ringkamp, Hullverson, Hullverson & Frank, Inc., Veryl L. Riddle, Thomas C. Walsh, St. Louis, Reed O. Gentry, Kansas City, John C. Milholland, Harrisonville, for amicus.

RENDLEN, Judge.

Delbert Lewis and Goldie, his wife, brought their action against Bucyrus-Erie (hereinafter B–E) manufacturer and against Sharp Enterprises (hereinafter Sharp) operator of a crane which toppled causing Delbert extensive personal injuries. Settling with Sharp for $290,000, plaintiffs continued against the manufacturer B–E as sole defendant on a theory of strict tort liability (MAI 25.04) for product defect.[1] Following a defendant's verdict plaintiffs sought review in the Court of Appeals, Western District, where the judgment was affirmed on the basis of plaintiffs having failed to make a submissible case, but the Court of Appeals ordered the cause transferred that we might examine for conflict in their opinion with the decisional law announced in *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362 (Mo.1969), and *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo. Banc 1977). Art. V, § 10, Mo. Const.; Rule 83.01. However, considering the cause as though here on original appeal, Art. V, § 10, Mo.Const., we affirm the trial court's judgment without the necessity of reaching the theory of liability for design defect advanced by the Court of Appeals.

Plaintiffs contend the trial court erred in permitting: (1) testimony concerning the substance of O.S.H.A. regulations[2] and (2) defense counsel's comments during closing argument, regarding: (a) plaintiffs' failure to call any manufacturer of load indicating devices, or the oiler of the crane lift, insinuating unfavorable testimony by such potential witnesses; (b) Delbert Lewis' awareness of the danger involved when he rode the lift; and (c) Sharp's ability as lessee to have installed a weight measuring device, implying that the capability of a distributor to cure a defect discharges the manufacturer from liability.

The crane in question was manufactured by B–E in 1969, and, at the time of the accident, July 17, 1972, was under lease by B–E to Sharp. It was a wheel mounted 110

---

1. The alleged design defect was the failure to provide a device to warn of overload.

2. The regulations mentioned are those promulgated by the Department of Labor, Occupational Safety and Health Administration, under authority of the Williams-Steiger Occupational Safety and Health Act of 1970.

Ton B–E transit model, equipped with four outriggers, extensions lowered to the ground during operation for stability. On the date of injury, the crane, fitted with a 160-foot boom, was employed to lift a steel sound cage onto two L-shaped arms, denominated bents, projecting inward from the top of Arrowhead Stadium in Kansas City. The crane had been used to install the bents two days earlier. During these maneuvers, the crane (with outriggers lowered) was positioned near the *exterior* wall of the Stadium, so the operator, unable to see the placement of the loads, was directed by hand signals from a worker atop the Stadium wall. The sound cage was lifted by the crane outside the Stadium, where two workers had boarded the load platform, and was swung over the Stadium wall to the top level of seats. There, three more workers, including Delbert Lewis, came aboard laden with the tools and materials for welding the cage to the bents cradle. The worker atop the Stadium signaled the crane to boom out and the operator attempted to hoist the cargo—cage, workers and welding equipment—toward its intended position on the bents. Suddenly, the crane tipped, causing the boom to strike the Stadium wall and collapse, flinging the men from the platform.

It is conceded the crane toppled from overload and asserting strict tort liability, plaintiffs maintain the want of a device to warn of overload and imminent danger of tipping constituted a design defect rendering the hoisting equipment unreasonably dangerous. Defendant B–E, on the other hand, contends the crane's boom angle indicator, utilized by an operator with infor-

mation of the load's weight and the distance of the lift, assured a secure range of use. In this respect, B–E asserts the equipment was safe and the mishap's cause lay with Sharp. Further, the crane was put to a use, i. e. hoisting personnel, not reasonably anticipated.

The crane operator was James Lenhart, a Sharp employee, who received direction from another Sharp employee, job-site supervisor Haggard. To assure a safe lift, knowledge of the distance to the lift point and weight of the load was required. The crane operator had access to a chart inside the cab which, when supplied the weight and distance (radius)[3] of the lift, indicated the safe load limit.[4] On the day of the accident, Haggard advised Lenhart that the sound cage lift was for 5,000 pounds at a boom radius of 100 feet. According to the chart, at that distance, the crane would lift 10,400 pounds with the safety factor of 25% and 11,800 with a safety factor of 15%. A 5,000 pound lift by a 160 foot boom was too minimal a load to appear on the chart. In actuality, the sound cage components weighed 10,800 pounds,[5] a fact sales engineer John Creal (from the structural steel manufacturer of the sound cage) had brought to Haggard's attention. This weight also appeared on the shipment invoices available to Haggard, and though Lenhart knew the load was a critical factor in the safety of the lift, he made no independent inquiry to determine its weight. The official B–E manual for the 110T crane was a maintenance primer, showing no method for an operator to gauge the load's actual weight. In spite of all this Lenhart could have verified the safety by a test lift,

3. The term "distance" (radius) is used to describe the horizontal measurement from the rotational center of the crane to the point where the load hangs from the boom known as the point of lift. The crane, a 110T B–E, was a transit type, integrally mounted on a flat-bed trailer attached to a truck cab. The crane was capable of 360 degree rotation, but in ordinary use was operated over the rear of the trailer bed carrier, the end opposite to the truck cab.

4. The chart first translated the radius to a boom angle. The crane operator then adjusted the boom to the proper angle by means of a boom angle indicator affixed to the crane aface the operator. The crane had no device to measure the weight of the load.

5. At the time of the casualty, this dead weight was augmented by the five workers aboard the hoist, two of whom weighed over 200 pounds, as well as a variety of materials and equipment.

but he accepted Haggard's information as correct. Prior to the accident Lenhart had directed one of the crane crew members, an oiler, to watch the outriggers during the lift for signs of lightness, but he received no warning from the oiler of the eventual toppling of the crane.

At trial, B–E resolutely maintained that hoisting *personnel* was a misuse of the 110T crane, but Lenhart, though his view of the sound cage was obscured, assumed workers were riding the load. There was evidence B–E and other industry officials were aware of such practice by workers on job sites. However, other proof pointed to industrial and governmental standards condemning the practice as unsafe. Further, defense expert witnesses indicated that the anticipated use of equipment determines its safety design, hence, a crane intended to hoist personnel is fitted with a more elaborate safety system than one for material only.

Plaintiff Delbert Lewis had been an ironworker for 25 years and had worked around many cranes during this time, yet he had never seen one equipped with a load moment or load indicator device. The crane in question was no different from others he had observed, except perhaps larger, and he did not expect it to be so equipped. Lewis helped assemble the sound cage for placement on the bents and before the lift had estimated the load at approximately six tons. While he rode on the crane because "there wasn't no way to get up there but ride the load," he was aware an overload entailed the risk of tipping the crane which would require the operator to drop the load. Sufficient expert testimony, pro and con, was presented to the contention that the design was defective for want of a load measure device that the issue be submitted under the theory of strict tort liability enunciated in *Keener v. Dayton Electric Mfg. Co., supra,* and *Blevins v. Cushman Motors, supra.* Defendant B–E's tendered instructions, submitting the contributory fault of plaintiff Delbert Lewis, were refused. The jury rendered a verdict for defendant.

## I.

▮▮▮ Plaintiffs first charge trial court error in twice permitting testimony concerning O.S.H.A. regulations, as violative of the "best evidence rule" and improperly leading the jury to conclude that O.S.H.A. prescribed the appropriate standards of conduct. This complaint stems from statements read into evidence by defendant from the deposition of Clark Lauer, an employee of B–E, that O.S.H.A. regulations prohibited workers riding load cranes. Plaintiffs claim (1) the regulations were the best evidence of their contents and (2) that reference to O.S.H.A. was irrelevant because such regulations are not "controlling in a products liability case." Plaintiffs overlook the fact that reading this portion of Lauer's deposition was merely explanatory and retaliatory, rendering reference to O.S.H.A collateral and the "best evidence rule" inapplicable. Where a writing's contents are not directly in question, though they may bear on an issue in the case, secondary evidence may be used without accounting for the original document. *Wilborn v. Williams,* 555 S.W.2d 44, 45 (Mo. App.1977); *F.C. Preuitt Construction Co., Inc. v. Doty,* 536 S.W.2d 908, 914–15 (Mo. App.1976); *Aviation Enterprises, Inc. v. Cline,* 395 S.W.2d 306 (Mo.App.1965). During their case in chief, plaintiffs read as an admission, a portion of Lauer's deposition in which counsel had inquired whether a well-known rule existed governing workers riding load cranes. Lauer had responded, "Evidently not, because they do it." During trial defense counsel secured the court's permission to pursue this matter and read further from the deposition, Lauer's statement that he believed O.S.H.A. regulations cautioned against lifting personnel with such cranes. Hence, as plaintiffs introduced the subject, eliciting the fact of the rule's existence, they may not now be heard to complain of its relevancy and the want of

an original writing, *see, Fontenot v. Lloyds Casualty Insurer*, 31 So.2d 290 (La.App. 1947); *First Nat. Bank of Payette, Idaho v. Miller*, 48 Or. 587, 87 P. 892 (Or.1906), nor claim surprise. Finally, if error may be said to have occurred, we are unable to discern plaintiffs' harm, as Lauer, in further response, retracted his assertions that O.S.H.A. regulations forbade hoisting workers by such cranes and concluded he was unsure what the O.S.H.A. rules provided.

■ Plaintiffs' next complain of statements read into evidence from the deposition of Ralph Eglsaer (another employee of defendant) that O.S.H.A. had found load indicating devices unreliable. Here too plaintiffs assign as error, irrelevancy and violation of the "best evidence rule", however, defendant's introduction of evidence concerning O.S.H.A. was explanatory of and retaliatory to previous evidence advanced by plaintiffs, rendering the reference collateral and the rule inapt. *See, Wilborn v. Williams*, 555 S.W.2d 44, 45 (Mo. App.1977); *F.C. Preuitt Construction Co., Inc. v. Doty*, 536 S.W.2d 908, 914–15 (Mo. App.1976); *Aviation Enterprises Inc. v. Cline*, 395 S.W.2d 306 (Mo.App.1965). Plaintiffs introduced the subject by adducing Eglsaer's statement that if reliable, a device which signaled imminent tip would be beneficial. The trial court then permitted defendant to read other portions of Eglsaer's response, explaining his answer, that "O.S.H.A. at one time was going to put that in, but had to drop it out because they found it very impractical.... It can't be relied on." Accordingly, plaintiffs, having broached the subject, are deemed to have waived their objections respecting relevancy and the "best evidence rule." *See, Fontenot v. Lloyds Casualty Insurer*, 31 So.2d 290 (La.App.1947); *First Nat. Bank of Payette, Idaho v. Miller*, 48 Or. 587, 87 P. 892 (Or.1906). Further, the challenged testimony did not concern the *contents* of a document, but went to O.S.H.A.'s *act* in withdrawing a proposed regulation requiring a load indicator device found to be impracti-

cal. For this reason too it would appear plaintiffs' "best evidence" contention is without merit. *Moschale v. Mock*, 591 S.W.2d 415, 419 (Mo.App.1979); *State ex rel. State Highway Commission v. Thelnor, Inc.*, 485 S.W.2d 443, 445 (Mo.App.1972); *State ex rel. Daniel v. Torrey*, 33 S.W.2d 130, 134 (Mo.App.1930).

■ Additionally, when complaints concerning relevancy and the "best evidence rule" are urged, the trial court's broad discretion is subject to reversal only in cases of clear abuse. *Boehmer v. Boggiano*, 412 S.W.2d 103, 110 (Mo.1967); *Nibler v. Coltrane*, 275 S.W.2d 270, 274 (Mo.1955); *Scrivner v. American Car & Foundry Co.*, 50 S.W.2d 1001, 1008 (Mo. banc 1932); *L.S. v. L.M.S.*, 538 S.W.2d 753, 755 (Mo.App.1976); *R.S. Willard Co. v. Columbia Van Lines Moving & Storage Co.*, 253 A.2d 454, 456 (D.C.App.1969). The prejudical effect, if any, of these two references was minimal, in light of other references to O.S.H.A. regulations before the jury. The departure, if any, from the best evidence rule in admitting this undisputed testimony may be regarded as harmless, *Moschale v. Mock*, 591 S.W.2d 415, 419 (Mo.App.1979); *R.S. Willard Co. v. Columbia Van Lines Moving & Storage Co.*, 253 A.2d 454, 457 (D.C.App. 1969); *Myrick v. U.S.*, 332 F.2d 279 (5th Cir. 1963), *cert. denied, Bergman v. U.S.*, 377 U.S. 952, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); *Sauget v. Johnston*, 315 F.2d 816 (9th Cir. 1963), and the contention is denied.

## II.

■ Plaintiffs next pose an array of challenges to comments of defense counsel during closing argument. In this connection several familiar principles bear iteration. The trial court is possessed of broad discretion in the area of closing arguments, not lightly to be disturbed on appeal. *Norfolk & Western Railway Co. v. Greening*, 458 S.W.2d 268, 273 (Mo.1970); *S.G. Payne & Co. v. Nowak*, 465 S.W.2d 17, 20 (Mo.App. 1971); *Lineberry v. Robinett*, 446 S.W.2d

481, 486 (Mo.App.1969); *Arroyo v. Keller,* 433 S.W.2d 584, 588 (Mo.App.1968). Further, counsel is accorded wide latitude in arguing facts and drawing inferences from the evidence, *id.,* and the law indulges a liberal attitude toward argument, particularly where the comment complained of is fair retort or responds to prior argument of opposing counsel. *Doyle v. St. Louis-San Francisco Ry. Co.,* 571 S.W.2d 717, 725 (Mo.App.1978); *Lineberry v. Robinett, id.*

### A.

The first complaint centers on two criticisms by defense counsel of plaintiffs' failure to call certain witnesses. It is urged that these comments constitute error as they impermissibly imply that testimony of such witnesses would have been unfavorable, when these potential witnesses were equally available to each party.

■ The following was defendant's first reference to plaintiffs' failure to call witnesses: "Did they bring in one person, one person, to say that these things [load indicator devices] were reliable? Not one person came into court. How about somebody from one of these companies, bringing one of them in? How about bringing one of them in and showing you folks—[at this point, plaintiffs' objection was overruled].... Members of the jury, I started out saying the burden of proof is on the plaintiffs and if the plaintiffs wanted to call one of these manufacturers to come in and tell you just how wonderful their new product is they could have done that.... but they didn't do it. They didn't do it." Contrary to plaintiffs' assertion that these statements wove an improper insinuation of unfavorable testimony, the record reveals the comments culminated defendant's argument that plaintiffs failed to prove the availability of a reliable device and that the crane, lacking the device, was defective. In ruling on the propriety of argument, the challenged comment must be interpreted in light of the entire record, rather than in isolation. *Phillips v. Vrooman,* 251 S.W.2d 626, 630 (Mo.1952). The comment did not exceed the bounds of proper argument that plaintiffs had failed in their burden of proving the crane defective without such a device. *See, Heshion Motors, Inc. v. Western International Hotels,* 600 S.W.2d 526, 533 (Mo.App.1980); *Colonial Construction Co. v. Sharp Industries, Inc.,* 421 S.W.2d 551, 554–55 (Mo.App.1967); *Johnson v. St. Louis Public Service Co.,* 256 S.W.2d 308, 312 (Mo.App.1953).

■ The next complaint concerns the following argument: " 'Was he [the oiler] there?' 'I don't know.' That was the man that was responsible for operating that crane. Did the oiler come in? Did they bring the oiler in to deny that he was not there and say, 'Folks, they're making light of me. I was standing there.' There's no question, that oiler wasn't there and that's why [at this point, plaintiffs' objection was overruled.] ... And that's where we got the two hundred and ninety thousand dollars, because Sharp Enterprises, Inc., who leased the crane out there, who sent out an operator and who sent out an oiler, they knew that they just blew the whole thing. They just didn't do what was right and they paid the man." Defendant's comment, going to B–E's principal defense, i. e., directing the blame to Sharp, was not impermissible. Defendant suggested an inference from the $290,000 settlement that Sharp was responsible for the accident. The undisputed evidence showed that though the oiler had been directed to watch the crane, he was not present when it tipped. Defendant had earlier argued these matters without objection. In this we discern no prejudicial error.

■ Finally, both references to plaintiffs' failure to call potential witnesses were in a sense retaliatory. Plaintiffs, in argument, stated that defendant had not presented its employees to deny any defect

in the crane, though plaintiffs had available and in fact utilized depositions of various employees.[6] Additionally, plaintiffs' counsel argued that had the union considered it improper for workers to ride the load, defendant certainly would have elicited this fact from a union official who testified. Hence, plaintiffs having injected allegations that defendant failed to refute their evidence, defendant was justified in its fair retort. *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 306 (Mo. banc 1978); *St. Louis County v. Szombathy*, 497 S.W.2d 144, 146 (Mo.1973); *Doyle v. St. Louis-San Francisco Ry. Co.*, 571 S.W.2d 717, 725–26 (Mo.App.1978); *Clark v. Mize*, 525 S.W.2d 635, 637 (Mo.App.1975); *Hartford Accident & Indemnity Co. v. List*, 424 S.W.2d 761, 766 (Mo.App.1968).

### B.

The trial court had refused to instruct the jury on the defense of contributory fault. Plaintiffs, however, complain of defense counsel's comment that Delbert Lewis recognized the danger involved in riding the load, alleging it improperly injected the issue in the cause. In this, plaintiffs overlook that defendant's comment was also relevant to Delbert Lewis' alleged misuse of the crane, a proposition strongly urged by defendant. Referring to the impropriety of workers riding the load, defendant had commented: "If you do that [overload the crane] and you know that the crane may start to tip and that if you have men you can't drop the load and that, therefore, those men are going to get hurt then, as the banker who used to be an ironworker [John Trotter] said, 'Well, when you rode up

out at the Sport's Complex, you did it at your own risk, yes, sir, no doubt about that.' He knew the danger involved and I think Mr. Lewis knew the danger involved." A reading of the entire argument reveals that the thrust of the statement is directed toward Lewis' misuse of the product as much as contributory fault, because Lewis knew riding the crane was an unacceptable practice which would preclude an operator from dropping the load to prevent an overturning.[7] *See, Phillips v. Vrooman*, 251 S.W.2d 626, 630 (Mo.1952). Indeed, former ironworker John Trotter's testimony had *centered* on whether the riding the load was a misuse. As an ironworker, Trotter had observed cranes lifting men as often as five times a day, countering defendant's assertion that hoisting personnel was not a reasonably anticipated use. Though it could go to a question of contributory fault as well, the comment had a reasonable connection with Lewis' use of the crane by riding the load, and whether he was using the crane in a manner reasonably anticipated, an element of plaintiffs' case. *Rogers v. Toro Manufacturing Co.*, 522 S.W.2d 632, 637 (Mo.App.1975); MAI 25.04. The fact that an argument may touch upon two issues, one legitimately in the case and the other not, does not per se require its rejection.

Additionally, defendant's statement seems in part to have been provoked by this argument of plaintiffs' counsel that Trotter had testified *everyone consistently* rode cranes. "Well, what did he [Trotter] tell you? 'Everybody was riding the load. We did the light cages. We did it all the time. We went out to other jobs. We all did it.' " The overruling of plaintiffs' objection to

---

6. Failure of a party to call his employee as a witness generally gives rise to the inference permitting an argument that such employee's testimony would be unfavorable. However, this rule does not necessarily adhere when the opposing party is possessed of the employee's deposition and knowledge of his testimony. "One may not have the advantage of the inference and the evidence too." *Bostwick v. Freeman*, 160 S.W.2d 713, 718 (Mo.1942); *Bean v. Riddle*, 423 S.W.2d 709, 720–21 (Mo.1968).

7. Plaintiff's awareness of his own misuse of the product is not without relevance to his strict liability action for product defect. *See, Perkins v. Fit-Well Artificial Limb Co.*, 30 Utah 2d 151, 514 P.2d 811, 812–13 (1973); *Magnuson v. Rupp Manufacturing, Inc.*, 171 N.W.2d 201, 207–08 (Minn.1969).

defendant responding argument was not error. *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 306 (Mo. banc 1978); *St. Louis County v. Szombathy*, 497 S.W.2d 144, 146 (Mo.1973); *Doyle v. St. Louis-San Francisco Ry. Co.*, 571 S.W.2d 717, 725–26 (Mo.App.1978); *Clark v. Mize*, 525 S.W.2d 635, 637 (Mo.App.1975); *Hartford Accident & Indemnity Co. v. List*, 424 S.W.2d 761, 766 (Mo.App.1968).

Finally, no protracted argument developed concerning this single statement of Delbert Lewis recognizing the danger involved. Defense counsel did not press an argument of contributory fault as precluding recovery. We can find no reversible error in this single sentence. *Norfolk & Western Railway Co. v. Greening*, 458 S.W.2d 268, 273 (Mo.1970).

### C.

■ Plaintiffs' final challenge to defense argument flows from the following: "The evidence is that if any of these people who own a crane or anybody who rents a crane or anybody who leases a crane, if they want a scale they can go out and buy a scale, they can go out and buy one of these devices." Plaintiffs claim error, contending the comment improperly inferred that the manufacturer (B–E) was discharged from liability by Sharp's failure to cure a defect. Defense counsel's statement tended to highlight the testimony (admitted without objection) that a wary crane operator could carry a portable scale to weigh the load prior to its hoist. The thrust of defendant's argument was to shore its principal defense that the blame for the accident rested with Sharp and its employees. According counsel wide latitude in commenting on the evidence and again recognizing that an argument possibly touching two issues is not illegitimatized by that fact, we defer to the trial court's sound discretion in controlling such argument. *Gilmore v. Union Construction Company*, 439 S.W.2d 763, 766 (Mo.1969); *Gathright v. Pendegraft*, 433 S.W.2d 299, 315–16 (Mo.1968); *Grab v. Da-*

*vis Const. Co.*, 109 S.W.2d 882, 888 (Mo.App. 1937).

Further, in their reply to defendant's argument, plaintiffs persuasively attacked any notion that Sharp's ability to cure the defect exonerated B–E, by citing evidence that B–E's lease forbade alterations of the crane. Here too, as in the previous point, we see no prejudice justifying reversal. *Norfolk & Western Ry. Co. v. Greening*, 458 S.W.2d 268, 273 (Mo.1970).

Plaintiffs finally submit that even if none of the errors alleged is sufficient to mandate reversal, their collective impact is such as to require a new trial. However, what we have said above indicates our view to the contrary, and this point is accordingly denied. *St. Louis v. Szombathy*, 497 S.W.2d 144, 147 (Mo.1973).

Affirmed.

All concur.