[Civ. No. 13096.   Second Dist., Div. One.   Oct. 2, 1941.]

CHARLES E. BURCH, Respondent, v. LEVY BROS. BOX COMPANY (a Copartnership) et al., Appellants.

George H. Moore, Hugh B. Rotchford and Robert E. Ford for Appellants.

Betts & Garrison and Wood, Crump & Rogers, for Respondent.

ARCHBALD, J. *pro tem.*—Plaintiff, respondent herein, was injured while standing on the sidewalk opposite a forty foot red zone marked on the curb, and about twenty inches back from the curb, in downtown Los Angeles, when he was struck by the right rear end of defendants' truck as it was backing up to the curb on an angle that brought the right rear wheel in contact with the curb some distance ahead of the left wheel. The truck was equipped with a stake body loaded with tiers of wooden boxes which shut off all view through the rear window of the cab; there was a rear view mirror on the left door of the cab. The rear end of the bed of the truck extended about four feet ten inches back of the rear tires.

The driver of the truck, who was acting in the course of his employment by the other defendants, who owned the truck, sounded his horn twice as he started to back the truck; the horn made a "good loud noise." The inside muffler on the truck had been taken out and the exhaust was audible for about 75 feet. The truck was backed at a speed of about one mile per hour and the driver did not know that he had struck anyone.

From a judgment in plaintiff's favor defendants have appealed, urging that the court erred:

1. In refusing to strike testimony as to the amount of nursing expense in the absence of evidence of the reasonable value of such services; and,

2. In refusing to declare a mistrial for cited misconduct of plaintiff's attorney.

1. Prior to plaintiff's injury, his wife had suffered an injury resulting in the breaking of two shoulder blades, which limited the use of her arms, and which required her to have constant assistance. The plaintiff himself had rendered such assistance before his injury, and in his complaint he alleged special damages in the sum of $605, for his alleged employment of a practical nurse and housekeeper to take care of himself and wife. The judgment entered on the verdict of the jury was in the lump sum of $5,312.50.

Respondent employed his niece to take care of his wife and to do the housework when he was in the hospital; also. to perform the same work for himself and wife while he was confined to his bed at home.

It clearly appears from the evidence that the so-called "nursing" services were in fact the same services that plaintiff himself performed in caring for his wife and in keeping the house, before his injury, and that the same services were performed for both of them while plaintiff was incapacitated at home by reason of his injuries. The niece gave plaintiff his morning baths, cooked and served his meals, rendered him other non-professional assistance, and when he seemed to be in more pain than usual she would rub his legs with a stimulant to start circulation. Plaintiff agreed to pay his niece $17 per week, from the time he came home from the hospital, and also provided her board and lodging. She was on call 24 hours a day. The amount paid is not claimed to be excessive.

It appears that the services so rendered were in no sense *expert* services, but were services any lay person could render, and the jury from their own experience could say whether or not the agreed pay was reasonable. We see no necessity for the proof, which, defendants claim, is lacking. The amount plaintiff agreed to pay was some evidence of reasonable value. (*Caulfield* v. *Market Street Ry. Co.*, 20 Cal. App. (2d) 220 [66 Pac. (2d) 752].)

2. During the cross-examination of defendant truck driver, plaintiff's attorney asked if he could have seen to the rear of the right hand side of the truck if there had been a mirror on the right hand door; if such a mirror had been installed subsequent to the accident, and if such defendant had requested his employer to install such a mirror prior to the accident. The court sustained objections to each of

such questions and admonished the jury to disregard them. Such objections were properly sustained. It is common knowledge that if there had been such a mirror there, and defendant had looked in it, he could have seen to the rear of the truck. Whether or not he had requested his employers to install such a mirror before the accident was entirely incompetent and immaterial, as was the fact of whether or not such a mirror had been installed subsequent to the accident.

During the examination of a private investigator called by plaintiff on rebuttal, plaintiff's attorney asked him to relate a conversation he had had with the defendant truck driver when he served some papers in the case on said driver after the suit was filed by plaintiff. The witness testified that during such conversation, observing that the truck had mirrors on both sides of the cab, he remarked to said defendant that he thought the driver would have seen the plaintiff as he backed toward the curb, to which the defendant driver replied, in effect, "If I had had both mirrors I would have seen him. I didn't have but one mirror at the time." Such witness also testified that the driver of the truck told him that he had requested his employers to put on this other mirror but they had refused to do so, and that he put it on at his own expense. Defendants moved to strike all of such testimony and requested that the jury be instructed to disregard it. Defendants' counsel further cited counsel's conduct "as prejudicial" and asked for a mistrial. The motion to strike was granted and the jury was told to disregard such testimony. The court said, with regard to such request, "I am not going to declare a mistrial because I have confidence enough in the jury to believe they will act under the court's instructions, and not entertain any prejudice by reason of this improper testimony."

We cannot commend counsel for plaintiff for acting as he did. None of such evidence was proper on rebuttal, nor can we conclude that any prejudice resulted therefrom. The defendant driver had already testified on cross-examination that except by looking through his left rear view mirror, he had "no view," and that such a mirror did not aid him in seeing anything on the right hand side, so it clearly appeared to the jury that the truck was not equipped with a right rear view mirror.

Defendants made a motion for a new trial which was denied. One of the grounds was "irregularity in proceedings of the . . . adverse party, by which defendants were prevented from having a fair trial." Respondent states that the alleged misconduct of counsel was urged at the hearing of such motion, and this occurrence is not denied in appellants' reply brief. The trial court must be deemed to have concluded that no prejudice was suffered by defendants by reason of such claimed misconduct, and as such court was in a much better position than we are to determine whether the verdict rendered was in any part due to such alleged misconduct, "his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong." (*LaFargue* v. *United Railroads*, 183 Cal. 720, 724 [192 Pac. 538].) In our opinion the circumstances shown here do not so indicate.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 27, 1941.