Filed 7/29/14  Gill v. Gill CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| SHAHGIR S. GILL, | C067746 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. CV024661) |
| v. | |
| SATNAM SINGH GILL et al., | |
| Defendants, Cross-complainants and Appellants, | |
| KULWANT KANG et al., | |
| Defendants and Appellants. | |

This appeal arises from a dispute between plaintiff Shahgir S. Gill (Shahgir) ( to avoid confusion, we refer to those parties who share the same surname by their first names), individually and doing business as S.G. Construction, (plaintiff) and defendants Satnam Singh Gill (Satnam), Dinesh Sharma (Dinesh), Rakesh Sharma (Rakesh), and

1

Kulwant Kang (collectively defendants) over their agreements to purchase and develop residential real property in Manteca.

When business relationships soured, the parties sued each other; the case went to trial and the jury found for plaintiff. The trial court entered judgment consistent with the verdict. Defendants filed a motion for new trial (Code Civ. Proc., § 657; unless otherwise stated, section references that follow are to the Code of Civil Procedure), and the court initially granted the motion. But, on further consideration, the court reversed and vacated that order and entered a new order denying defendant's motion for a new trial.

On appeal, defendants contend the trial court ruled correctly when it first granted the motion for new trial. Defendants further contend the court lacked jurisdiction to reconsider its order granting that motion and, in any event, it was error to grant the motion for reconsideration and, thereafter, deny the motion for a new trial.

As we will explain, the trial court properly exercised its inherent authority to revisit and reverse its ruling on the motion for new trial. We also construe defendants' appeal as a challenge to the order denying the motion for a new trial and hold that the trial court did not err in entering that order. We affirm the judgment.

FACTS AND PROCEEDINGS

We dispense with a detailed recitation of the facts underlying the merits of the lawsuit as those facts are unnecessary to our resolution of this appeal. Suffice it to say that Shahgir and Satnam reached an agreement, the terms of which are in dispute, whereby Satnam would purchase real property on which Shahgir would construct a residential home for a certain dollar amount per square foot. Once the home was sold, Satnam (and later, Satnam and Dinesh) would pay Shahgir one-third of the net profits from the sale. Shahgir, Satnam, and Dinesh subsequently agreed to a similar arrangement for the construction and sale of a second home on a neighboring lot.

2

Although construction was eventually completed on the first home (which was sold to Rakesh and then re-sold), and on the second home (which was sold to Kang and then re-sold), numerous issues arose between the parties regarding payment of construction costs and monies owed as a result of the sale of the two homes.

In September 2004, plaintiff filed a complaint alleging various causes of action against Satnam and Dinesh (Complaint).

In November 2005, plaintiff filed a first amended complaint alleging contract and tort causes of action against Satnam and Dinesh. Plaintiff amended the pleading several more times, eventually settling on a fourth amended complaint which included additional causes of action and named Rakesh, Kang, and Jason and Julie Heitz as additional defendants (Fourth Amended Complaint).

Satnam and Dinesh cross-complained against plaintiff, alleging tort and contract causes of action of their own (Amended Cross-Complaint).

Jury trial commenced on October 26, 2010. Defendants moved for a mistrial based on alleged improper voir dire. The court found no misconduct, but elected to excuse the jury panel in an abundance of caution.

Trial commenced with a new jury on October 29, 2010. Plaintiff rested after four days of testimony, at which time defendants again moved for a mistrial or a directed verdict. The court denied defendants' motion. Following several more days of testimony, defendants filed yet another motion for mistrial alleging juror misconduct and misconduct by plaintiff's counsel. The court denied that motion as well.

During closing argument, plaintiff's counsel made the following statements:

"And as you think about that, before we talk about the law, before we talk about the evidence, let me point out a few key facts to you, facts. You heard Satnam tell you that he tried for a couple months to track Shahgir down to pay him that $109,000 that he had in draw checks from Bismark, but Shahgir wouldn't reveal himself. Shahgir wouldn't come get the money. You also heard Satnam tell you that he profited even

3

under his own definition of this contract, even under his own definition of net profit, after all the costs were paid for, he told you he profited, he and Dinesh profited at least a [sic] $120,000 from the sales of these homes.  And he told you that he tried to track Shahgir down to give Shahgir his one-third of that, but again, Shahgir wouldn't come and get his money.  That's the story.

"Ladies and gentlemen, we've been here for two weeks, maybe a little bit more.  None of these defendants have told you or can tell you that they offered Shahgir any money coming into this trial, that they came here because Shahgir is here.  He's been here every day.  They found him, but they can't tell you that they offered to pay him any money."

Defense counsel objected.  After an unrecorded discussion with counsel at the bench, the court overruled the objection.  Closing arguments resumed, and the case was given to the jury.

On November 18, 2010, the jury returned its verdicts in favor of plaintiff and against defendants on both the Fourth Amended Complaint and the Amended Cross-Complaint.  The next day, the court entered judgment consistent with the verdicts, and served notice of entry of judgment on the parties.

Defendants Satnam, Dinesh, and Rakesh filed a motion for new trial on December 2, 2010 (defendant Kang filed a separate motion on December 3, 2010).  Defendants collectively filed points and authorities and declarations in support of the new trial motions on December 13, 2010, and filed amended points and authorities and declarations seven days later.  The motion set forth 36 grounds for granting a new trial.  Eleven of those grounds urged improper argument by plaintiff's counsel resulting in an "irregularity in the proceedings" (§ 657, subd. (1)), including the following:  "During the closing arguments, plaintiff's counsel said that '*none of these defendants have told you or can tell you that they offered Shahgir any money coming into this trial . . . .*'  [Record citation.]  Rey Hassan [defense counsel] objected, there was a discussion at the bench and

4

the court overruled.  Bringing in pre-trial settlement discussions is impermissible.  There were discussions of settlement at pre-trial settlement conference, defendants made an offer that was rejected by the counsel himself. . . .  This issue was not raised during the trial and it is contrary to what actually occurred.  This is clearly prejudicial because now the jury is told that the Defendants did not offer to settle the case and tried to get away without paying any monies even though in closing argument plaintiff's counsel Hassan [sic] mentioned a figure that a jury could award against the defendants."

The motion for new trial was heard on January 3, 2011.  Plaintiff's counsel and counsel for defendant Kang appeared and submitted the matter.  The court noted and discussed only one of the issues raised in defendants' moving papers--the propriety of the 2005 dismissal of the Complaint with prejudice, and subsequent reinstatement of the action--and took the matter under submission.

On January 14, 2011, the court entered an order granting defendants' motion for new trial.  As stated in the order, the court decided the matter as follows:

"During closing argument, counsel for plaintiff said 'none of these defendants have told you or can tell you that they offered Shaligir [sic] any money coming into this trial' . . . .  [¶]  Ray [sic] Hassan objected, the matter was discussed at bench and the court overruled the objection.  [¶]  This argument by plaintiffs [sic] counsel was an irregularity in the proceedings under C.C.P. § 657(1) as improper argument to the jury that cannot be cured by a judge's admonition.  The jury cannot be informed of settlement discussions, offers of settlement or that no offer of settlement was made.  Further, there was no evidence on the topic of settlement, and the comment invited the jury to speculate as to the unsupported inference that no offer of settlement were [sic] made.  Also, according to the defendants, the attorney misstated the facts, in that offers of settlement were made by the defendants prior to trial.  All in all, this argument by plaintiffs [sic] counsel created a miscarriage of justice such that all defendants were prevented from having a fair trial."  The order was served on all parties on January 18, 2011.

5

On January 28, 2011, plaintiff filed a motion for reconsideration of the court's January 14, 2011 order pursuant to section 1008.

On March 11, 2011, following oral argument, the court entered its "Order Granting Motion for Reconsideration and Reversing Prior Order Granting Motion for New Trial." The order included the following language:

"Having reviewed the basis of its previous Order granting Defendants a new trial and determined *on its own initiative pursuant to its inherent authority* that reconsideration of that prior Order is appropriate, and having reviewed and considered the applicable law on the issue of the propriety and effect of Plaintiff's counsel Mr. Vignolo's comment during closing argument to the effect that 'none of these Defendants have told you or can tell you that they offered Shahgir any money coming into this trial,' the Court hereby orders as follows: [¶] . . . [¶] This Court's January 14, 2011 Order granting new trial is hereby reconsidered and reversed; [¶] . . . [¶] The Court's Order granting Defendants' Motion for New Trial was not properly granted as the comment made by Mr. Vignolo during closing argument was not error and did not offend the prohibitions of California Evidence Code section 1152[;] [¶] . . . [¶] The Court's Order granting Defendants' Motion for New Trial was not properly granted as there is no evidence in the record to establish a reasonable probability that Defendants would have received a more favorable result absent Mr. Vignolo's comment; [¶] . . . [¶] A new and different Order denying Defendants' Motions for New Trial shall be entered . . . ." (Italics added.)

DISCUSSION

Defendants challenge the trial court's reconsideration of its January 14, 2011, order granting the motion for new trial. They contend the motion for new trial was properly granted. They further contend the trial court was without jurisdiction to reverse or change its order granting the new trial motion and, in any event, it was error to grant

6

the motion for reconsideration and, upon reconsideration, deny defendant's motion for a new trial.

As a preliminary matter, we reject plaintiff's claim that the propriety of the court's March 11, 2011, order reversing and vacating its January 14, 2011, order granting the new trial motion is not properly before us due to defendants failure to specifically challenge that "distinct portion of the March 11, 2011 order" in their notices of appeal. "The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) "[A]n appeal will not be dismissed because of a misdescription of the judgment or order to which it relates, unless it appears that the respondent has been misled by such misdescription." (*Girard v. Monrovia City School Dist.* (1953) 121 Cal.App.2d 737, 739.)

The court's March 11, 2011, order is entitled "Order Granting Motion for Reconsideration and Reversing Prior Order Granting Motion for New Trial." As plaintiff correctly points out, that order includes both an order reconsidering and reversing the January 14, 2011 order, and an order denying defendants' motion for new trial. Defendants' amended notice of appeal indicates defendants are appealing from, among other things, the "Order Granting Motion for Reconsideration dated March 11, 2011," and from the judgment on the verdict entered November 19, 2010. It is clear from the notice of appeal, as well as the appellate briefing, that defendants are challenging the trial court's reconsideration and reversal of its January 14, 2011, order granting the new trial motion. That appeal would undoubtedly encompass a review of that portion of the March 11, 2011, order vacating the January 14, 2011 order. Further, the court's order denying the motion for new trial is reviewable on defendants' appeal from the underlying judgment. (See §§ 904.1(a)(2) and 906; *Walker v. Los Angeles County Metropolitan Transp. Authority* (2005) 35 Cal.4th 15, 18-19 [although order denying motion for new trial is nonappealable, denial is reviewable on appeal from underlying judgment].)

7

Finally, plaintiff makes no claim that he was misled by the notice of appeal or was unaware of the fact that defendants sought to challenge the court's reconsideration, reversal, and vacation of its earlier order granting the motion for new trial. We therefore construe the notice of appeal liberally in favor of its sufficiency as properly noticing appeal from the trial court's reconsideration, reversal, and vacation of its January 14, 2011, order granting the new trial motion, and from the underlying judgment, making reviewable the order denying the motion for new trial as well.

I

*Trial Court Properly Exercised its Inherent Authority to*

*Reconsider its Order Granting a New Trial*

Turning to the merits of defendants' claims, we first address the issue of whether the trial court's reconsideration of its order granting the motion for new trial was proper. We conclude it was.

" 'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control [their] order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.' " (*Lorraine v. McComb* (1934) 220 Cal. 753, 756.)

In particular, a trial court has broad power, inherent in the California Constitution, to rehear, reconsider and correct what it perceives to be an incorrect interim ruling. (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1246-1250.) The inability to correct such an error is " 'a serious impediment to a fair and speedy disposition of causes.' " (*De La Beckwith v. Superior Court* (1905) 146 Cal. 496, 500.) "A court could not operate successfully under the requirement of infallibility in its interim rulings.

8

Miscarriage of justice results where a court is unable to correct its own perceived legal errors, . . . ." (*People v. Castello, supra,* 65 Cal.App.4th at p. 1249.)

Defendants argue that plaintiff's motion for reconsideration brought under section 1008 was, for a number of reasons, defective.

"Section 1008 . . . states procedures for applications to reconsider any previous interim court order. It 'applies to all applications for interim orders' (§ 1008, subd. (g)) and provides time limits and other requirements for such applications. It contains several provisions relevant here. It generally requires that any motion for reconsideration be based 'upon new or different facts, circumstances, or law . . . .' (§ 1008, subds. (a), (b).) It also provides: 'If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order.' (§ 1008, subd. (c).) Finally, it provides: 'This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section.' (§ 1008, subd. (e).)" (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1098 (*Le Francois*).)

Section 1008 and other reconsideration statutes "prohibit a *party* from making renewed motions not based on new facts or law, but do not limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question." (*Le Francois, supra,* 35 Cal.4th at pp. 1096-1097, 1107-1109.) Regardless of "whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion," if a trial court "believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came

9

to acquire that belief." (*Id.* at p. 1108; see also *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1307-1308.) "[A] party's filing of a motion for reconsideration in violation of the reconsideration statutes does not erect a permanent, insurmountable barrier to reconsideration by the trial court on its own motion." (*Barthold* at p. 1309.)

Defendants argue an order granting a motion for new trial is not the kind of "interim" order contemplated by *Le Francois*. Our state's highest court addressed that very issue in *People v. DeLouize* (2004) 32 Cal. 4th 1223 (*DeLouize*), explaining as follows: "An order granting a new trial is not final in the sense of being a final resolution of the case or a final determination of the defendant's guilt or innocence. On the contrary, an order granting a new trial 'does not finally dispose of the matter.' (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387.) In a criminal case, '[t]he granting of a new trial places the parties in the same position as if no trial had been had.' (Pen. Code, § 1180.) Thus, an order granting a new trial is an interim order in the sense that it requires further proceedings before the case may be resolved and judgment may be pronounced." (*DeLouize, supra,* 32 Cal.4th at p. 1231.)

Defendants maintain *DeLouize* "carves a narrow exception for reconsideration of orders granting new criminal trials" and is therefore inapplicable. We disagree for two reasons. First, while the *DeLouize* court ultimately concluded reconsideration of the new trial order was proper given developments in the law regarding certain applicable jury instructions which "constituted a material change in the law undercutting the legal ground for defendant's new trial motion, and thus the very purpose for having a new trial" (*DeLouize, supra*, 32 Cal.4th at p. 1233), there is nothing in the opinion to suggest that the court's characterization of the new trial order as an "interim" order hinged on its ultimate conclusion that reconsideration was proper.

Second, the Supreme Court could very well have constrained its "interim" order characterization to new trial orders in *criminal* cases only. It did not, and we see no reason why the underlying reasoning should not apply in this civil context. Like

10

*DeLouize*, the order granting defendants' motion for new trial here did not finally dispose of the matter. Rather, it returned the parties to their pre-trial stance requiring further proceedings to bring the dispute to a close. (*Jiminez v. Sears, Roebuck & Co., supra,* 4 Cal.3d at p. 387; *Alhambra Consol. Mines, Inc. v. Alhambra Shumway Mines, Inc.* (1966) 239 Cal.App.2d 590, 600.) Thus, the trial court's exercise of its inherent power to correct what it perceived to be an erroneous ruling avoided inconvenience and expense to the parties, and conserved precious judicial resources, associated with the relitigation of the same facts and issues.

Moreover, as a result of the order granting a new trial, the trial court continued in its role as the custodian of justice over the parties and proceedings in the case. Acknowledging the court's right to control the business before it such that the rights of all parties involved "may be safeguarded" (*Lorraine, supra,* 220 Cal. at p. 756), we are reticent to deny it the exercise of its inherent power to revisit a prior interim order it believes to be erroneous. (*Le Francois, supra,* 35 Cal.4th at p. 1108.)

Defendants argue the trial court's lack of jurisdiction to reconsider a prior order granting a new trial is firmly rooted in case law, citing cases including *Odd Fellows' Sav. Bank v. Deuprey* (1884) 66 Cal. 168 and *Bloomquist v. Haley* (1928) 204 Cal. 258. Those cases do not, however, speak to the court's inherent constitutional authority to revisit and correct its interim rulings, among which is an order granting a motion for new trial. (*DeLouize, supra,* 32 Cal.4th at pp. 1231-1232.)

Finally on this point, while the issues are not precisely the same, we find instructive the following:

" . . . [W]e distinguish, but do not disapprove, the early cases, beginning with *Morite of California v. Superior Court* [(1993) 19 Cal.App.4th 485], that held that sections 437c and 1008 limit the court's power (or jurisdiction) to reconsider motions by the parties. We agree with the later line of cases, beginning with *Darling, Hall & Rae v. Kritt* [(1999) 75 Cal.App.4th 1148] (and, in dicta, *People v. Castello* [(1998)

11

65 Cal.App.4th 1242]), that interpreted the statutes as limiting the parties' power to file repetitive motions but not the court's authority to reconsider interim rulings on its own motion. . . . We hold that sections 437c and 1008 limit the parties' to file repetitive motions but do not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Le Francois, supra,* 35 Cal.4th at p. 1107.)

We conclude the trial court properly exercised its inherent authority, derived from the constitution, to reconsider the prior interim ruling and correct its own perceived judicial error thus facilitating a fair and speedy disposition of the parties' dispute.

II

*The Order Denying Defendant's Motion for New Trial*

Our decision that the trial court acted within its inherent authority in reconsidering its earlier order granting defendant's motion for new trial requires us to turn to the court's order denying the new trial motion. We note that our decision approving the trial court's revisitation of the new trial motion effectively moots the trial court's first order granting defendants a new trial, an order that the trial court later reversed and, effectively, vacated.

Somewhat awkwardly, defendants spend a good deal of time in their briefing arguing that the first order that granted a new trial was correct. Except in a paragraph or two at the end of their brief, they do not argue directly that the court's order denying a new trial was an abuse of the trial court's discretion.

Even so, we will read defendants' briefing to argue that the new trial motion was ultimately denied in error for the reasons that defendants set forth in their initial motion. In other words, we take the defendants' position to be that the trial court erred in denying the new trial motion for the same reasons that it was correct to grant the motion in its initial ruling. We give defendants considerable leeway here because, given our earlier ruling that the trial court could reconsider its first order, defendants normally would be

12

required to show why an order denying them a new trial was error, not why the first order granting them a new trial was not. In any event, our broad reading of the briefing requires a discussion of defendants' points in support of its original motion for a new trial. We conclude the trial court did not err in ultimately denying the motion.

An aggrieved party may move the trial court to vacate a judgment and grant a new trial for the following reasons materially affecting the substantial rights of the parties: "1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial. [¶] 2. Misconduct of the jury . . . [¶] 3. Accident or surprise, which ordinary prudence could not have guarded against. [¶] 4. Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial. [¶] 5. Excessive or inadequate damages. [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law. [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application." (§ 657.)

We are mindful of the fact that "[a] trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion. ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 524, quoting *People v. Williams* (1988) 45 Cal.3d 1268, 1318.)

" 'Misconduct of counsel as a ground for new trial presents a matter primarily committed to the trial court. [Citation.] The judge who presides over the trial, who hears the testimony and the arguments, and whose own experience gives him a fine sense of the general atmosphere of trial proceedings, is in a far better position than appellate judges to evaluate the effect of disputed argument.' (*Henninger v. Southern Pacific Co.* (1967) 250 Cal.App.2d 872, 881.)

13

"However, article VI, section 13 of the California Constitution provides: 'No judgment shall be set aside, *or new trial granted*, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Italics added.)

" ' "[T]he trial court is bound by the rule of California Constitution, article VI, section 13, that prejudicial error is the basis for a new trial, and there is no discretion to grant a new trial for harmless error. [Citation.] . . . The grant of a new trial for harmless error violates the constitutional provision and wastes judicial time and resources to no purpose. [¶] Accordingly, *the order granting a new trial is valid only if prejudicial error occurred at the trial*." [Citation.]' (*Garcia v. County of Los Angeles* (1986) 177 Cal. App.3d 633, 641.)" (*Garcia v. Rehrig Internat., Inc.* (2002) 99 Cal.App.4th 869, 874-875, italics added.)

We conclude no error occurred here, prejudicial or otherwise. During the trial, Satnam testified regarding two checks totaling approximately $109,000. The following questions were asked and answers given:

"[Plaintiff's Counsel]: And you never gave either check to Shahgir, right?

"[Satnam Gill]: He never came forward to take his money. We requested over and over.

"[Counsel]: So you never gave either check to Shahgir?

"[Satnam]: But he never came, sir, to take the money when we request us to go meet him and he never showed up at that point.

"[Counsel]: Okay.

"[Satnam]: We were getting money after him. This is your money, this is your money, we need to pay you. You did the work for us. And he never showed up.

14

"[Counsel]: So, sir, your testimony is that you brought these two checks to Shahgir and said we want you to take this money, but he wouldn't show up to come get it; is that your testimony?

"[Satnam]: I already said, sir, we wanted to see what he spend and sit down with us what he exactly spend the money and take the money if we owe him more we will sign our own personal check to him, but he never showed up. [¶] . . . [¶]

"[Counsel]: You held onto them until [January of 2005]?

"[Satnam]: We waited for him. I don't want no dispute with nobody. We waited over six month [sic] holding this money in my hand. He never showed up."

Satnam was later asked to confirm that it was his testimony that he was "trying to hunt Shahgir down to pay him the [$]109,000," to which he responded, "Yes, sir. Three times. A[t] least three times we took the money with us, me and Mr. Dinesh Sharma. He never showed up."

Satnam was also asked about money he and Dinesh made in the approximate amount of "[$]100,000 on one property and [$]20,000 on another." The following questions were asked and answers given:

"[Plaintiff's Counsel]: Once the $120,000 enters your bank accounts, did you stop and say to yourself, you know what, whatever happened between Shahgir Gill and I, all the stuff we've already covered/different prices. This and that. He did this. We did that, all of the conflict that is intensified in a family, did you stop and think [to] yourself with Mr. Dinesh, 'Let's give him some money'? Did you have that thought?

"[Satnam Gill]: We had thought for so long until he filed the lawsuit against us. We were still waiting for him to come forward that way we can clean up everything. It's a family matter, but it didn't went that way.

"[Counsel]: Did you try to give him -- if it was one-third he'd be entitled to $40,000. Did you try to pay him $40,000?

"[Satnam]: If he would have come forward, yes.

"[Counsel]:  Did you try to?

"[Satnam]:  I would.

"[Counsel]:  Not would you.  Did you?  If you did, that's fine?

"[Satnam]:  No, I did not.

"[Counsel]:  Why not?

"[Satnam]:  Because he never came forward.

"[Counsel]:  Don't you think you had a duty to go find him and pay the $40,000?

"[Satnam]:  We tried.

"[Counsel]:  You tried to find him to pay the $40,000?

"[Satnam]:  We tried to have him sit down, but he never came."

In closing argument, plaintiff's counsel made specific reference to the claim that Satnam tried to "track Shahgir down to pay him that $109,000 . . . , but Shahgir wouldn't reveal himself.  Shahgir wouldn't come get the money," and that Satnam "tried to track Shahgir down to give Shahgir his one-third of that [$120,000], but again, Shahgir wouldn't come and get his money."  Counsel followed-up those statements by arguing, ". . . we've been here for two weeks, maybe a little bit more.  None of these defendants have told you or can tell you that they offered Shahgir any money coming into this trial, that they came here because Shahgir is here.  He's been here every day.  They found him, but they can't tell you that they offered to pay him any money."

Defendants characterize counsel's statements in closing argument as an impermissible reference to pre-trial settlement discussions.  The record suggests otherwise.  Plaintiff's counsel specifically referenced the amounts of $109,000 and one-third of $120,000.  Not only did Satnam testify about those particular amounts, he also conceded Shahgir was owed the $109,000 and one-third of the $120,000 and repeatedly claimed he and the other defendants attempted on numerous occasions to pay Shahgir those amounts.

16

"[I]n summing up the case counsel are given wide latitude; . . . they are at liberty to discuss the case in all its bearings, provided they do not attempt to bring in matters outside the case made. And where facts alluded to are in evidence counsel has the right in argument to refer to them. [Citation.]" (*Shriver v. Silva* (1944) 65 Cal.App.2d 753, 763-764 [court rejected appellants' complaint of prejudicial misconduct by plaintiff's counsel in referring to subject matter in closing argument where appellants' counsel "injected" the subject into the case during trial]; see also *Aydlott v. Key System Transit Co.* (1930) 104 Cal.App. 621, 628 [where facts that personal injury accident prevented plaintiff from pursuing occupation as stenographer and instead compelled her to abandon her home and move to a house over a garage were in evidence at trial, plaintiff's counsel "had a right" to refer to those facts in closing argument].) Read in context, and in light of Satnam's testimony, counsel's argument was an appropriate attempt to challenge facts placed in evidence by defendants' testimony that numerous attempts to pay Shahgir were thwarted by Shahgir's refusal to come forward to receive payment.

It is significant to our finding of no error that defense counsel's objection to the challenged argument was, after an unrecorded discussion at the bench, overruled. It seems to us that the trial judge's consideration of the issue of potential attorney misconduct and his decision to overrule defendants' objection the very moment of the challenged statements and while the testimony, arguments, and courtroom dynamics were fresh in mind, lends credence to the ruling in a way that later consideration of the issue on a cold record does not.

The absence of error is further demonstrated by the affidavit filed in support of defendants' motion. "Application for new trial on the ground of misconduct of counsel unquestionably comes within the provisions of subdivision 1 of section 657 of the Code of Civil Procedure, and section 658 of the code requires that such application be made upon affidavits," except where "the alleged misconduct fully appears from a reading of the reporter's transcript." (*Green v. County of Merced* (1944) 62 Cal.App.2d 570, 571-

17

572.) "Although it is well settled that the granting or denial of a motion for a new trial is discretionary with the trial court and its determination will not be disturbed even though this court might be inclined to rule differently if passing on the motion de novo [citations], the power is not absolute. . . . 'This rule has no application where the affidavit or other evidence upon which the order is made furnishes no basis for the exercise of such discretion.' " (*Kauffman v. De Mutiis* (1948) 31 Cal.2d 429, 433-434; see also *Wade v. De Bernardi* (1970) 4 Cal.App.3d 967, 975.) Such is the case here.

In support of their claim of "irregularity in the proceedings" resulting from the closing argument by plaintiff's counsel, defendants offered the declaration of Dinesh Sharma which attests as follows: "During the pre-trial conference there were settlement negotiations. Defendants offered monies to settle the case. Plaintiff's counsel rejected the offer and made a counter offer which [was] not accepted. During Plaintiff's closing argument, attorney for the plaintiff, said that the defendants never offered any settlement money."

While the Dinesh declaration attests to pre-trial settlement negotiations between the parties, it fails to explain how, if at all, those negotiations are related to the specific statements by plaintiff's counsel regarding payment of the $109,000 or one-third of the $120,000. Further, while the declaration opines that plaintiff's counsel "said that the defendants never offered any settlement money," plaintiff's counsel said nothing about payment or lack of payment of "settlement money" and, as previously discussed, the record makes plain that counsel was referring to Satnam's claims of unsuccessful attempts to pay Shahgir the money owed him because Shahgir refused to come forward and receive payment. Thus, the only declaration offered by defendants in support of their claim of attorney misconduct resulting in "irregularity in the proceedings" provides no support for an order granting a new trial under the circumstances we have before us.

Having dispelled the claim of attorney misconduct, and thus the claim of error, we reject defendants' contention that the trial court correctly determined in its first order that

18

counsel's argument "created a miscarriage of justice such that all defendants were prevented from having a fair trial." In the absence of error, the order granting defendants' motion for new trial on this particular ground of "irregularity in the proceedings" was invalid. (*Garcia v. Rehrig Internat., Inc., supra,* 99 Cal.App.4th at pp. 874-875.) And, for the same reasons, the court's order denying the motion for a new trial was correct.

Finally, defendants argue that the trial court's March 11, 2011, order only "recanted" one of the three reasons the trial court originally granted the motion for new trial, that is, that "(1) [the statement] purported to inform the jury either of offers of settlement or that 'no offer of settlement was made', (2) [the statement] invited the jury to 'speculate as to the unsupported inference' that no offer of settlement was made, and (3) [the statement] 'misstated the facts' in that Defendants declared in support of their motion that in fact offers of settlement were made prior to trial."

This argument need not detain us long. In the first place, the three points to which defendants refer are essentially the *effect* of the same alleged misconduct of counsel, an allegation which we have here dismissed. In the second, the trial court in its March 11, 2011, ruling reversed and, in legal effect, vacated its first order, making that order and all of its rulings a legal nullity.

DISPOSITION

The judgment is affirmed.

                                                                _____HULL_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____MAURO_____, J.

20